CHARLIE ROSS, BY NEXT FRIEND ET AL V. TIDE WATER
OIL COMPANY ET AL.

No. 7591. Decided January 1, 1941.
Rehearing overruled February 5, 1941.
(145 S. W., 2d Series, 1089.)

*Mr. & Mrs. C. S. Bradley,* of Groesbeck, *V. M. Johnson* and *Clay Cotton,* both of Palestine, and *Geppert, Geppert & Victery,* of Teague, for plaintiffs in error.

A married woman living with, and joined by, her insane and mentally incompetent husband cannot convey title to her separate real estate, or the homestead of herself and husband, without substantial compliance with the provisions of Articles 4617 and 4618 of the Revised Statutes. Simmons v. Armin, 110 Texas 309, 220 S. W. 66.

*Vinson, Elkins, Weems & Francis,* of Houston, *Thompson, Knight, Baker, Harris & Wright, Dwight L. Simmons* and *Hart Willis,* all of Dallas, *A. M. Barton* and *George Burkitt,* of Palestine, *E. E. Sanders and James & Conner,* all of Fort Worth, for defendants in error.

The mineral leases and deeds duly executed and acknowledged by Falvie Ross to her separate property were and are valid and effective, even if on the dates thereof her husband was insane. Clements v. Ewing, 71 Texas 370, 9 S. W. 312; Harris v. Hamilton, 221 S. W. 273; Slator v. Neal, 64 Texas 222.

*J. Roy Creighton,* of Mineral Wells, and *Lyndsay D. Hawkins,* of Breckenridge, filed brief as amicus curiae.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

Falvie L. Ross brought this suit in the form of trespass to try title to recover an undivided interest in an 80 acre tract of land and for the cancellation of three mineral leases and deeds. Falvie L. Ross died during the pendency of the suit and the same was prosecuted by Charlie Ross, through next friend Porter Cooper, and L. C. Jefferson individually and as executor of the estate of Falvie L. Ross, deceased. It was alleged that on the 20th day of July, 1926, plaintiffs in error were the owners in fee simple of an undivided interest in and to the 80 acre tract of land.

That Falvie L. Ross died May 27, 1936; that she and Charlie Ross had been husband and wife for a period of approximately twelve years prior to her death.

That Charlie Ross became insane about ten years preceding suit and has been continuously insane since said date.

That Charlie Ross and wife Falvie L. Ross, deceased, established and designated the land sued for as their homestead about 1928 and that the same had never been abandoned.

That on or about January 16, 1933, Falvie L. Ross, joined by her husband, executed and delivered a purported oil and gas lease in favor of John H. Reagan covering said land; that said lease was assigned to P. N. Wiggins, Jr.; that thereafter by mesne conveyances the legal title to said leasehold mineral estate became invested in defendants Tide Water Oil Company and Seaboard Oil Corporation.

That on September 5, 1933, Falvie L. Ross, joined by her husband, executed a purported ratification of said lease to P. N. Wiggins, Jr., including therein an additional 1.83 acres of land.

That on June 18, 1933, Falvie L. Ross, joined by her husband, executed and delivered to Wildman Petroleum Corporation a purported mineral deed and that this mineral estate was by mesne conveyances assigned to the aforesaid oil companies.

That at the time of the execution of the purported ratification lease and the purported mineral deed, Charlie Ross was insane and was insane at all material times mentioned in plaintiffs in error's pleadings, and that for such reason said mineral leases and deeds should be cancelled and held for naught.

That P. N. Wiggins, Jr., at the time of securing said assignments, was acting for and on behalf of Tide Water Oil Company and Seaboard Oil Corporation.

The defendants in error answered by general denial, plea of not guilty and by allegations that they were innocent purchasers for value without notice of fraud or inadequacy of price and consideration.

The parties stipulated that the 80 acres involved in suit, was originally the property of the mother and father of Falvie L. Ross; that the mother died intestate in 1895, leaving as her legal heirs her husband and several children; that Falvie L. Ross acquired an undivided interest in said land from her mother, subject to the life estate and homestead rights of her father. It was further stipulated that no order of court was obtained authorizing Falvie L. Ross to execute the mineral leases and deeds without the joinder of her husband.

A jury trial resulted in findings that Charlie Ross was insane at the time he executed the mineral leases and deeds and that Falvie and Charlie Ross acquired a homestead right in the 80 acre tract of land in 1928 which was never abandoned.

Judgment was entered cancelling the mineral leases and deeds and awarding plaintiffs in error the title and possession of the undivided interest in the land.

The aggrieved parties appealed to the Court of Civil Appeals. The judgment appealed from was by the Galveston Court of Civil Appeals reversed and rendered in favor of Tide Water Oil Company et al, 123 S. W. (2d) 479. This Court granted a writ of error.

■ It is unnecessary for us to state the various contentions of the parties to this appeal. It appears that the land in controversy was the separate estate of Falvie L. Ross. For the purpose of this decision it may be assumed that the land in suit was the homestead of Falvie L. Ross and her husband and was never abandoned by them. The fact that the homestead right of Falvie L. Ross and her husband, Charlie Ross, attached to the separate estate of Falvie L. Ross, did not destroy the power of Falvie L. Ross to convey her separate estate without the joinder of her husband, he being insane. It has been the rule in this State, beginning with Wright v. Hays, 10 Texas 130, that joinder by the husband is unnecessary in a conveyance by the wife where the husband has permanently abandoned the wife, or where the husband is insane. In the Wright case it is said:

"The general rule at common law now is that where a husband absolutely deserts his wife or leaves the State without any intention of returning or becomes the subject of a foreign State or is civiliter mortuus, his wife is regarded as a feme sole and may hold property by deed, make contracts, and sue and be sued upon them."

In Clements v. Ewing, 9 S. W. 312, Mr. Chief Justice Stayton, speaking for the court, said:

"Under such circumstances (permanent abandonment) the wife was empowered to manage and dispose of her separate estate as a feme sole. It was said that it was not proved that any necessity for the sale of the land existed at the time Mrs. Hicks made the conveyance. To authorize Mrs. Hicks to sell her separate estate, when abandoned by her husband, without being joined by him, it was not necessary that a necessity for such sale should exist. The rule invoked has application only when the abandoned wife sells community property, and has its existence for the protection of the delinquent husband."

In the case of Clark v. Wicker, 30 S. W. 114, the Dallas Court of Civil Appeals held:

"We agree with the learned Judge below upon the conclusion reached that a married woman may legally convey her separate real estate, without being joined in the deed by her husband, where the husband has become incurably insane. Upon this ground, under the facts of this case, Mrs. Clark's deed, acting without her husband, was valid, and conveyed title to the property in question."

To the same effect is the case of Shields v. Aultman, Miller & Co., 50 S. W. 219, writ of error refused.

The rule is the same with reference to homestead which is the separate property of the wife. In the case of Mabry v. Citizens Lumber Co., 105 S. W. 1156, writ of error refused, the court said:

"It is well settled, we think, that the wife alone may convey her homestead situated upon her separate property in cases where the husband has abandoned her. See Hector v. Knox, 63 Tex. 613; Lacy v. Rollins, 74 Tex. 566, 12 S. W. 314; Speer on Married Women, Secs. 31, 105. In such cases the wife is treated by the decisions as having a power to convey her property equal to that of a feme sole, and it hence seems clear that section 50, art. 16, of our Constitution does not inhibit the conveyance or lien under consideration."

In the case of Harris v. Hamilton, 221 S. W. 273, (Tex. Com. App.) it is said:

"The power to convey necessarily includes the power of mortgage, in the absence of some constitutional or statutory inhibition. It has been repeatedly held in this state that a married woman, after being permanently abandoned by her husband, can convey her separate property, whether her homestead or not, without the joinder of her husband. Hector v. Knox, 63 Tex. 613; Lacy v. Rollins, 74 Tex. 566, 12 S. W. 314; Mabry v. Lumber Co., 47 Tex. Civ. App. 443, 105 S. W. 1156. The basis of these decisions is that, while the married relation has not been legally severed, a status is created in the wife, insofar as her property rights are concerned, identical with that of a feme sole, giving her full power over her property the same as if the marital relation did not exist. We therefore conclude that both the notes constituted a valid lien upon all of the property embraced within the deed of May 15, 1911."

It is contended by plaintiffs in error that a married woman living with her insane husband cannot convey title to her separate real estate, the homestead of herself and husband,

without substantial compliance with the provisions of Articles 4617 and 4618, Vernon's Annotated Civil Statutes of 1925.

The statutes governing the conveyance of the wife's separate lands or the homestead, whether the separate property of the husband or wife or the community property of both, as they existed in 1933, are as follows:

Article 1299 of the Revised Civil Statutes is as follows:
"The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgements to deeds for the purpose of being recorded, and certified to in the mode pointed out in articles 6605 and 6608."

Article 4617 is as follows:
"If the husband be insane or shall have permanently abandoned his wife, or shall refuse to join in such encumbrance, conveyance or transfer of such property, the wife may apply to the district court of the county of her residence and the court in term time or vacation, upon satisfactory proof that such encumbrance, conveyance or transfer would be advantageous to the interests of the wife, shall make an order granting her permission to make such encumbrance, conveyance or transfer without the joinder of her husband and she may then encumber, convey or transfer said property without such joinder. * * *" (This article was amended by Acts of 1937, 45th Leg., p. 1343, Ch. 499, not material in this proceeding.)

Article 4618 provides as follows:
"The homestead, whether the separate property of the husband and wife, or the community property of both, shall not be disposed of except by the joint conveyance of both the husband and the wife, except where the husband is insane or has permanently abandoned the wife, in which instances the wife may sell and make title to any such homestead, if her separate property, in the manner herein provided for conveying or making title to her other separate property."

The last two statutes quoted seem to be the result of an amendment in 1913 and an amendment in 1917. It is to be noted that the amendments authorized such an order where the husband is insane or has permanently abandoned the wife. The emergency clause of the 1917 amendment is as follows:

"The fact that there is now no *statutory enactment* granting

the married women the right to manage and dispose of their separate property in cases of abandonment by the husband and in cases in which he is insane, and that great confusion now prevails in the minds of the public as to their property rights in such instances, is unjust to a large number of citizens of this state, creates an emergency, etc."

In the case of Moss v. Ingram, 239 S. W. 1029, (writ of error refused), Mr. Justice Higgins, in passing upon a similar contention as that made here, used the following language:

"In this connection plaintiff in error contends that the rule of decision giving to an abandoned wife the power to convey without the joinder of her husband has been abrogated by the act of the 33rd Legislature, p. 61, amending Article 4621, R. S. 1911 (Vernon's Sayles Annotated Civil Statutes, 1914, Article 4621). By this act it was provided that if the husband refused to join with the wife in the incumbrance or conveyance of the wife's separate real estate, she might apply to and obtain permission from the District Court to so incumber or convey her said estate without the joinder of her husband. Plaintiff in error insists that this act provides the exclusive and only way in which the wife may incumber or convey her separate real estate without the joinder of her husband, and that the permission of the District Court so to do is an indispensable prerequisite. But we do not so construe the act. In our opinion it was cumulative of her rights theretofore recognized, and not restrictive thereof. Article 4621 was again amended in 1917 (Vernon's Ann. Civ. St. Supp. 1918, Art. 4621). The last amendment deals with the right of a permanently abandoned wife to incumber and convey her separate estate, but that amendment was subsequent to the transaction here involved, and it is unnecessary to consider what, if any, effect it had upon the right theretofore recognized of an abandoned wife to convey her separate estate."

In the case of Newman v. Gill et al, 243 S. W. 697, a contract of conveyance by a married woman without the joinder of her husband, from whom she was separated was upheld. Likewise, the Dallas Court of Civil Appeals, in the case of Royall v. Webster, 279 S. W. 895, upheld the power of an abandoned wife to convey her separate property without the husband joining her in such conveyance. In the case of Green v. Windham, 278 S. W. 1101, this Court held that the surviving husband or wife, the other spouse having been legally adjudged insane, by qualifying as administrator of the community estate under the provisions of law, can sell and convey the community

homestead. Referring to the wording of the statute, which it is contended provides for the exclusive method of conveyance, it is to be noted that the statute provides that the wife *may* apply to the district court and the wife *may* sell and make title to any such homestead. In 39 Texas Jurisprudence, on page 37, under Section 15, it is stated:

"Thus, where no right or benefit depends upon its imperative use, the word 'shall' is held to be merely directory and as having been used in the sense of 'may'. On the other hand, 'may' ordinarily connotes discretion or permission; and it will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in that sense."

In the case of San Angelo National Bank v. J. H. Fitzpatrick, 88 Texas 213, this court said:

"We are aware that the word 'may' is sometimes construed as if it were 'shall'; but it is not to be denied that in its primary and ordinary signification it is a word of permission, and not a word of command. Before treating it as a word of command, there should be something either in the subject matter or the context to indicate an intention that it was employed in that sense. If it had been the purpose to give the Legislature no discretion in the matter, it seems to us a term would have been employed, the import of which was not doubtful, and it would have declared unmistakably that it was the duty of the Legislature to provide for the appointment of a special judge."

■ The power of the wife, under circumstances such as presented in this case, to convey her separate lands or homestead without the joinder of her husband, he being insane, being almost universally recognized by the courts prior to the statutory enactments in question and the Legislature having used permissive words and not words of command, we must construe the statutory enactments to be cumulative of her rights theretofore recognized and not restrictive thereof.

Plaintiffs in error rely upon the cases of Cromer v. Schafer, 250 S. W. 444, by the San Antonio Court of Civil Appeals, and Falls v. Key et al, 278 S. W. 893, by the Fort Worth Court of Civil Appeals. In the first case mentioned no writ of error was prosecuted to this court. The application for writ of error in the Falls case was dismissed for want of jurisdiction by this court, evidently upon the theory that the judgment rendered in the case was correct. Regardless of the theory upon which the court acted, it can not be said that this court in any-

wise approved the reasoning contained in the opinion, with reference to the proposition of law now under consideration. In order to settle the conflicts now existing between the courts of civil appeals on the question of law presented in this case, it becomes necessary to disapprove the holding contained in each of the above cases on which the plaintiffs in error rely.

Community administration laws well illustrate permissive legislation for the management and disposition of property by one spouse where the other has died or become insane. That the community administration laws are not exclusive is demonstrated by the case of Reynolds Mortgage Co. v. Gambill, 280 S. W. 531. In that case it is said:

"Was the deed of J. M. Gambill and his insane wife sufficient to convey their community homestead?

"We answer the question certified 'Yes.'

"There has been much uncertainty in the minds of the Courts of Civil Appeals, and no doubt the profession generally, as to the rule of law with respect to the interesting question here certified, due, perhaps, to the conflicting holdings by the different Courts of Civil Appeals; one of such courts repudiating its former decision upon the same question, and denying its soundness. See Priddy v. Tabor (Tex. Civ. App.) 189 S. W. 111. But whatever uncertainty has heretofore existed, we think the question is entirely settled by the decision of the Supreme Court in Green v. Windham, 278 S. W. 1101 (delivered January 6, 1926), the opinion in which was handed down the day prior to the submission of this cause before us.

In that opinion Mr. Justice Pierson says:

" 'We would feel disposed to enter into a more extended discussion of the principles of law involved but for the fact that this court has twice expressed its approval of the conclusion here reached, in the cases of Shields v. Aultman, et al, 50 S. W. 219, 20 Tex. Civ. App. 345, in 1899, and Gilley v. Troop, 146 S. W. 954, in 1912. In each of these cases, by the Court of Civil Appeals, the sole issue was the power of the surviving sane spouse to convey the homestead, i. e., the validity of the husband's deed, the wife being insane . . . .

" 'In the case of Priddy v. Tabor, 189 S. W. 111, the honorable Court of Civil Appeals held differently. A writ of error was granted, but the case was dismissed from the docket of this court by agreement of the parties. But for the conflict with that case, probably the writ of error herein would not have been granted.'

"So that this decision expressly approving that particular

ground of decision in the Shields-Aultman and Gilley-Troop Cases removes all doubt as to whether or not the refusal of writs in those cases was predicated upon the theory of abandonment which appeared in both cases. Nothing need be, or can be, said further upon this particular phase of the case.

"There is, however, a question raised suggesting that, even though the constitutional prohibition against conveyance by the husband without the wife's joinder does not apply, still the homestead being admittedly the community property, and the conveyance having been by the husband individually, and not as administrator, the question certified should yet be answered in the negative. There is no merit in this suggestion. In the Green v. Windham Case, supra, the agreed statement of facts disclosed that the husband, for himself, and as administrator of the community estate of himself and his insane wife, executed the conveyance in question. The Supreme Court gave scant notice to this feature of the case, however, dismissing it with this observation:

" 'The question of the existence or nonexistence of debts against the community estate is of no importance in the case.'

"Of course, if this question was of no importance in the case, it was because the husband's right to convey was not dependent upon an administration."

To the same effect, see Pierce v. Gibson, 184 S. W. 502; Sanger Bros. v. Heirs of Moody, 60 Texas 98.

It follows from what we have said that the judgment of the Court of Civil Appeals which reversed and rendered the judgment in favor of defendants in error must be affirmed.

Opinion adopted by the Supreme Court January 1, 1941.

Rehearing overruled February 5, 1941.