**HIGGINBOTHAM et ux. v. FORT WORTH NAT. BANK.**

No. 14531.

Court of Civil Appeals of Texas.
Fort Worth.

May 28, 1943.

Rehearing Denied June 25, 1943.

W. M. Short, of Fort Worth, for appellants.

Robert Sansom, of Fort Worth, for appellee.

McDONALD, Chief Justice.

This is a foreclosure suit. The defendants, W. A. Higginbotham and wife, Cludie M. Higginbotham, who are the appellants here, urge that the lien asserted is invalid because of the homestead character of the property in question and because of the mental incapacity of Mrs. Higginbotham at the time she signed the various written instruments involved.

The Higginbothams acquired the property by deed from James W. Offutt, dated December 1, 1926. The property then became their homestead, and has been their homestead ever since. The deed from Offutt to Higginbotham recites a consideration of $7,950, $1,000 of which was cash, $3,950 of which was a vendor's lien note from Higginbotham to Offutt, and $3,000 of which was the assumption by grantees of a certain note payable to the order of Brite College of the Bible, and secured by a deed of trust lien upon the property. The vendor's lien note to Offutt was due three years after its date, and the note to Brit College of the Bible was due May 12, 1927.

On February 20, 1929, the Higginbothams executed a mechanic's lien note and contract for $3,000 to A. H. Smith as contractor, due in ninety days, for the erection of additional improvements on the property. The improvements were completed according to contract.

On April 12, 1929, W. A. Higginbotham and Mrs. Higginbotham executed two notes, payable to Jas. Harrison and others as the trustees and executors of the will and estate of Sallie H. Culberson, one of the notes being for $600 and the other for $7,000. On the same day the Higginbothams executed a deed of trust to Zeno C. Ross, for the purpose of securing the two notes just mentioned. The deed of trust recites that such notes are executed in renewal and extension of the unpaid balance of $3,100 owing on the above mentioned $3,000 note payable to Brite College of the Bible, and of the unpaid balance of $1,500 owing on the $3,950 vendor's lien note payable to Offutt, above mentioned, and of the entire amount, $3,000, of the mechanic's lien note payable to A. H. Smith. It is recited that the holder of the two notes secured by the deed of trust shall be subrogated to all rights, liens, etc., of the holders of such notes so extended and renewed.

Proper transfers of the notes and liens referred to were executed and delivered to the trustees of the Culberson estate. The Fort Worth National Bank is now the only trustee of said estate, and maintains this suit as such.

The two notes, for $600 and $7,000 respectively, have been twice renewed and extended by extension agreements in writ-

ing, signed by both Higginbotham and wife, the first one being dated May 1, 1937, and the second being dated February 17, 1940. As of June 1, 1942, all of the interest accruing on the notes had been paid, except in the amount of $500.63, but none of the principal had been paid.

The trial court rendered judgment in favor of the plaintiff upon an instructed verdict for the sum of $8,100.63, together with interest from June 1, 1942, against W. A. Higginbotham, and ordered foreclosure of the deed of trust lien, but did not render a money judgment against Mrs. Higginbotham. The Higginbothams have appealed.

Appellants devote much of their brief to a discussion of whether the evidence raises a jury issue as to Mrs. Higginbotham's mental capacity to execute the various instruments which were executed by her. Appellee concedes that her mental incompetence, at all times material herein, is established without dispute by the evidence, and that knowledge of her condition is imputable to plaintiff, by reason of circumstances not necessary to describe. We shall therefore consider that Mrs. Higginbotham was mentally incompetent at all times material herein, and shall, for the purposes of this discussion, treat her joinder in the various instruments as of no effect, and shall, necessarily, determine whether the execution by W. A. Higginbotham of the $3,000 mechanic's lien to A. H. Smith, the $600 and the $7,000 notes dated April 12, 1929, the deed of trust of same date, and the two renewals and extensions later given, was sufficient to impress and continue in force a valid lien upon the property without the joinder of his wife in such instruments.

The controlling question presented by the appeal is this: May the husband, when the wife is insane, create a valid mechanic's lien against the community homestead without the joinder of his wife? So far as we have been able to ascertain, the question has not been directly passed upon by the appellate courts of Texas.

The Constitution of Texas, Art. 16, Section 50, Vernon's Ann.St. provides: "The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

In Shields v. Aultman, Miller & Co., 20 Tex.Civ.App. 345, 50 S.W. 219, 221, writ of error denied, it is held that the husband, when the wife is insane, may alone convey the homestead as he could any other community property. The reasons for the holding are fully stated in the opinion. The substance of the holding is that, except as to the homestead, the husband is invested with authority to manage and dispose of the community property without the joinder of the wife. The wife is given the privilege of assenting, or of dissenting, when the sale of the homestead is involved, because she is so deeply concerned in the fact of a home for the family. But in requiring that her consent be obtained, the framers of the law contemplated the consent of a person mentally capable of a decision. As the opinion states, "It is not the consent of a crazy woman that the law contemplates as essential to the alienation of the homestead; it is the consent of the wife whose faculties of reason and discretion have not been dethroned." The opinion points out that a guardianship of the person or estate of the wife would avail nothing in such respect, because such a proceeding would not accomplish the purpose of the Constitution, in that it would not obtain her personal assent or dissent to the sale. It is said that the property would thus be hopelessly tied up unless the husband had authority to convey without the joinder of the wife.

The decision just cited still remains the law in Texas. Green v. Windham, 115 Tex. 162, 278 S.W. 1101; Reynolds Mortgage Co. v. Gambill, 115 Tex. 273, 280 S.

404

W. 531; Ross v. Tide Water Oil Co., 136 Tex. 66, 145 S.W.2d 1089.

The same reasons which would warrant the alienation of the community homestead by the husband alone, when the wife is insane, would warrant the encumbrance of the homestead with a mechanic's lien. The requirement of the Constitution is that the work and material be "contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead". That which is required in the one case, and only that, is required in the other. If the law does not contemplate the consent of a crazy woman in the case of a sale of the homestead, then it does not contemplate the consent of a crazy woman to a mechanic's lien thereon. If her personal consent to a sale could not be obtained through a guardianship, then her personal consent to a mechanic's lien could not be obtained in such manner. The husband would be left powerless to make a mechanic's lien to improve the homestead to meet changing conditions which might arise, or to provide for needed repairs, and the property would, as said in Shields v. Aultman, Miller & Co., supra, be hopelessly tied up in his hands.

Harris v. Hamilton, Tex.Com.App., 221 S.W. 273, supports our view that there is no essential distinction between sales and encumbrances in such class of cases.

What we have said is sufficient to answer the contention made by appellants that the husband alone, in such instance, would be powerless to make a valid extension of a lien indebtedness against the homestead. The decision in Uvalde Rock Asphalt Co. v. Hightower, Tex.Com. App., 166 S.W.2d 681, is not in point in the kind of situation we have here.

Appellants cite many cases from other states which announce rules contrary to those stated above, but we must follow the rules prevailing in our own jurisdiction.

It is of no importance that the wife had not been legally adjudged to be of unsound mind in a proceeding brought for that specific purpose. The decisions in Green v. Windham and Reynolds Mortgage Co. v. Gambill seem clearly to indicate this.

Appellants have made some reference, in a reply brief and also in oral argument, to a claim that the evidence shows that $300 of the loan made on April 12, 1929, was to cover a brokerage fee for obtaining the loan. Since the matter is not raised in any point of error, it cannot be considered.

The judgment of the trial court is affirmed.