Jo Ann SCHMIDT et al., Appellants,

v.

Agnes SCHMIDT et al., Appellees.

No. 4470.

Court of Civil Appeals of Texas.

Waco.

May 12, 1966.

Rehearing Denied June 2, 1966.

Andrew Shuval, Hereford, Everett H. O'Dowd, Waco, for appellants.

Thomas B. Bartlett, Marlin, David B. Kultgen, Waco, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiffs from a take-nothing judgment in a suit to declare void 2 deeds executed by Ben Tepe; and an appeal by plaintiffs from a take-nothing judgment in a suit to set aside the will of Ben Tepe. Plaintiffs are some of the children of Ben and Elizabeth Tepe; defendants are grantees in the 2 deeds, and the other children of Ben and Elizabeth Tepe.

On January 15, 1963 Ben Tepe executed a deed to 50 acres (being community property and homestead of Ben and Elizabeth Tepe) to the Veterans' Land Board, for resale to J. B. Hazelwood for $5063.

On September 11, 1963 Ben Tepe executed a deed to 161 acres (being community property and homestead of Ben and Elizabeth Tepe) to Eugene Radle for $16,000.

Both deeds recited that Ben Tepe was not joined by his wife, Elizabeth, because she was a person of unsound mind.

Thereafter, plaintiffs filed suit to set aside such deeds, alleging: Ben Tepe was of unsound mind at the time of execution;

that Ben Tepe was the subject of undue influence at the time of execution; and that such deeds were void because Elizabeth Tepe had never been judicially declared to be of unsound mind.

On March 3, 1964 and while such suit was pending, Ben Tepe died, and his will executed on February 10, 1964 was offered for probate. Such will left his property to care for his wife; and after her death divided the property between his children, but subject to charges for recited advancements to plaintiffs; and confirmed as payments for services rendered, the sums of $1,000 theretofore paid to some of the defendants, (reciting such should not be considered as advancements).

Plaintiffs contested the will alleging Ben Tepe was not of sound mind at the time of execution of the will; and that such will was made as the result of undue influence. The County Court probated the will and defendants appealed to District Court.

The deed case and the will case were consolidated by agreement. Trial was to a jury which found:

1) Ben Tepe had testamentary capacity at the time he signed his will (February 10, 1964).

2) Ben Tepe knew the nature and consequences of his act in executing the deed to Radle (September 11, 1963).

3) Ben Tepe knew the nature and consequences of his act in executing the deed to the Veterans' Land Board (January 15, 1963).

The trial court entered 2 separate judgments on the verdict: 1) that plaintiffs take nothing in the suit to declare the 2 deeds void; and 2) that plaintiffs take nothing in the suit to set aside the will.

Plaintiffs appeal from both judgments, contending:

1) The 2 deeds are void because Elizabeth Tepe had not been judicially de-clared to be incompetent at the time of their execution by Ben Tepe.

2) The trial court erred in refusing to submit issues on undue influence in the making of the 2 deeds.

3) There is no evidence, or insufficient evidence, to support the jury's finding that Ben Tepe had testamentary capacity at the time he executed the will.

4) The trial court erred in not submitting an issue as to whether Ben Tepe knew the contents of his will at the time he executed it.

Plaintiffs' first contention is that the 2 deeds are void because Elizabeth Tepe had not been judicially declared to be incompetent. Ben Tepe executed the 2 deeds on January 15th and September 11, 1963, reciting in each that he was not joined by his wife Elizabeth because she was a person of unsound mind.

█ A husband to convey the homestead must be joined by his wife. Art. 1300 Vernon's Ann.Tex.Civ.St.; Art. 16, Sec. 50 Texas Constitution, Vernon's Ann.St.

█ However, where the wife is insane, the husband has the right to convey the homestead without the joinder of the wife. Reynolds Mtg. Co. v. Gambill, 115 Tex. 273, 280 S.W. 531; Higginbotham v. Ft. Worth Nat. Bank, CCA, Er. Ref., 172 S.W.2d 402; 28 Tex.Jur.2d p. 531. In both the Reynolds and Higginbotham cases, supra, the insane wife had never been judicially decreed insane. In the Higginbotham case the court says:

"It is of no importance that the (insane) wife had not been legally adjudged to be of unsound mind in a proceeding brought for that specific purpose."

(In the Reynolds case the jury found that the wife was of unsound mind.)

In the case at bar, Mrs. Tepe had not been judicially declared to be incompetent, but plaintiffs admitted in their pleadings

(and on argument) that Mrs. Tepe was at the time of the execution of the deeds and for a long time prior thereto, a person of unsound mind.

Plaintiffs assert that Section 157 of the Probate Code, V.A.T.S. requires the wife to be judicially declared to be incompetent before the husband can alone convey the homestead. Such section provides: "Wherever a husband or wife is judicially declared to be incompetent, the other spouse * * * acquires full power to manage, control, and dispose of the entire community estate * * *."

Section 157 of the Probate Code and Articles 3663 and 3664 which it repealed and replaced, all relate to the administration of community property, and we think are not determinative of the factual situation here involved. In any event, Articles 3663 and 3664 required the insane wife to be judicially declared incompetent, so the rule of the Reynolds and Higginbotham cases, supra, governs.

Plaintiffs' 2nd contention is that the trial court erred in not submitting issues on undue influence in the execution of the deeds. The burden of proof of undue influence is upon plaintiffs. The test of undue influence is whether there is evidence of control exercised over the mind of Ben Tepe so as to overcome his free agency and free will, and to substitute the will of another so as to cause him to do what he would not otherwise have done but for such control. Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208; Boyer v. Pool, 154 Tex. 586, 280 S.W.2d 564.

There is no evidence that anyone exercised undue influence on Ben Tepe to execute the deeds. The contention is overruled.

Plaintiffs' third contention is that there is no evidence, or insufficient evidence to support the jury's finding that Ben Tepe had testamentary capacity at the time he executed the will.

Mr. Tepe was 94 years old, sick and in bed, when he executed his will on February 10, 1964. The witness Newby, one of the subscribing witnesses to the will, testified that the recitations in the attestation clause of the will took place on February 10, 1964 sometime after 12:00 o'clock; that Mr. Tepe appeared to know what he was doing; that he was conscious enough to know the business he was about, and what he was doing; that he spoke to the witness Newby; that he signed the will; that Mr. Tepe spoke to Mr. Hazelwood (the other witness to the will); that Mr. Tepe was asked if he was ready to sign it; that he was helped up and signed the will. The witness Hazelwood testified the will was signed on February 10, 1964 in the afternoon about 1:00 o'clock (and later testified it could have been as late as 3:00 o'clock); that Mr. Tepe spoke to him and asked him about his daughter; that he thinks Mr. Tepe knew what he signed; that he thinks Mr. Tepe knew the nature and extent of his property, how much land he owned and how much money he had at the time he signed the will; that Mr. Tepe was in bed and sick and old; that Mr. Tepe knew the other people in the room; that Mr. Tepe talked with his son Joe a little bit, and asked for a pencil. Both Newby and Hazelwood had known Mr. Tepe for many years, but had not seen him for a number of months prior to February 10, 1964. The witness Duncan testified that the last time he saw Mr. Tepe in the latter part of January he was mentally alert. All of the evidence showed Mr. Tepe knew the nature and consequences of his acts in January and September, 1963, and there is no complaint at such findings.

The witness Dr. Swepstone testified he was a medical doctor; that he made a house call on Mr. Tepe on February 10, 1964 in the afternoon between 12:00 and 2:30; that Mr. Tepe was sick and unconscious at the time; and not able to recognize his relatives or know the nature and extent of his property; that Mr. Tepe did not have sufficient memory to collect in his mind the

necessary elements to make a will or form a reasonable judgment; that Mr. Tepe was in critical condition. Dr. Swepstone further testified that he "could not say definitely, but I do not believe Mr. Tepe could have been perfectly normal an hour or two hours before I saw him, or four hours before I saw him"; and further: "the only time I am testifying about Mr. Tepe's mental condition is the time I saw him on February 10th, and what his condition was before or after I do not purport to tell the jury." Dr. Swepstone fixed the date of his call by his office records, and the time of the call by his memory.

While the jury could have found either way from the evidence, the jury had the right to believe Newby and Hazelwood; and the right to disbelieve the doctor, or to believe the doctor mistaken as to the day or the time he testified he saw Mr. Tepe; and the right to believe Mr. Tepe had testamentary capacity when he signed the will, and later that day became in the condition testified to by Dr. Swepstone. In any event, we think the evidence ample to sustain the jury's finding, and that such finding is not against the great weight and preponderance of the evidence.

 Plaintiffs' fourth contention is that the trial court erred in not submitting an issue as to whether Mr. Tepe knew the contents and provisions of his will at the time he executed it.

A testator is presumed to know the contents of his will from the fact of execution. Kelly v. Settegast, 68 Tex. 13, 2 S.W. 870; Boyd v. Frost Nat. Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326. Plaintiffs rely on the exception to the foregoing rule in Kelly v. Settegast, where the court said: In a case: 1) where a will was written by one who under it would take ½ of the estate; 2) the deceased was unable to read and write; 3) the will was unnatural in that it gave the testator's estate to strangers to the blood; 4) and testator was advanced in age and in poor health;

that such facts call for clear proof that the testator knew the contents of the paper offered for probate.

In the case at bar there is no showing who prepared Mr. Tepe's will (although it is in evidence that it was in keeping with intentions Mr. Tepe expressed to the witness Carter that he was going to make a will and require his children who owed him debts to account for such debts); and the will was not an unnatural will. The facts are not sufficient to bring the case at bar within the exception to the general rule set out in the Settegast case. See: Leeder v. Leeder, CCA, Er. Ref., 161 S.W.2d 1112. The contention is overruled.

Both judgments appealed from are affirmed.