

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

*overruled by H-194 where conflict*

February 28, 1968

Honorable Frank Coffey
Criminal District Attorney
Tarrant County
Fort Worth, Texas

Opinion No. M-207

Re: Whether a County Commissioners Court, having levied taxes for each fund at a separate rate, may consolidate its jury fund, permanent improvement fund and general fund while maintaining separate and apart its road and bridge fund.

Dear Mr. Coffey:

By recent letter, accompanied by brief, you have requested an opinion from this office regarding the above stated question. We quote from your letter as follows:

"The County Commissioners of Tarrant County have consolidated the general fund, the jury fund, and the building or permanent improvement fund into a single fund pursuant to Article VIII, Section 9 of the Constitution as amended, but have failed to include the road and building fund in that consolidation. From this action has arisen the question of the constitutionality of combining less than all funds into a single fund as construed as mandatory by Article VIII, Section 9."

Section 9 of Article VIII, Texas Constitution, as amended by the people of Texas on November 11, 1967, is quoted in part as follows:

". . . and no county, city or town shall levy a tax rate in excess of Eighty Cents (80¢) on the One Hundred Dollars ($100) valuation in any one (1) year for general fund, permanent improvement fund, road and bridge fund and jury

fund purposes; provided further that at the time
the Commissioners Court meets to levy the annual
tax rate for each county it shall levy whatever
tax rate may be needed for the four (4) consti-
tutional purposes; namely, general fund, permanent
improvement fund, road and bridge fund and jury
fund so long as the Court does not impair any
outstanding bonds or other obligations and so
long as the total of the foregoing tax levies
does not exceed Eighty Cents (80¢) on the One
Hundred Dollars ($100) valuation in any one (1)
year. Once the Court has levied the annual tax
rate, the same shall remain in force and effect
during that taxable year; . . . Any county may
put all tax money collected by the county into
one general fund, without regard to the purpose
or source of each tax. . . ."

Section 9 of Article VIII, Texas Constitution, was
previously amended in 1956, at which time substantial changes
were made by the people of Texas. Among other things, the
1956 amendment removed the specific tax limitation on the funds
in question here. The 1967 amendment to Section 9 made only
one change by adding the following quoted language: "Any
county may put all tax money collected by the county into one
general fund, without regard to the purpose or source of each
tax."

The leading case on Section 9 of Article VIII of
the Texas Constitution, is Carroll v. Williams, 109 Tex. 155,
202 S.W. 504 (1918), in which the Court held that the specific
tax limitations in Section 9 on the various funds controlled
not only the raising but also the application of all such funds
and so prevents the expenditure of money raised for one purpose
being used for another purpose. The Court stated at page 506:

"Going to the real gist of the main issue
before us, section 9 of article 8 of our state
Constitution, supra, inhibits any and all
transfers of tax money from one to another of
the several classes of funds therein authorized,
and, as a sequence, the expenditure, for one

purpose therein defined, of tax money raised ostensibly for another such purpose. The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit accordingly, the amount of taxes which may be raised from the people by taxation; decidedly for those several purposes or classes of purposes, respectively. But that is not all. The ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive expenditures for any such purpose or class of purposes. By necessary implication said provisions of section 9 of article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever. Those constitutional provisions control, not only the raising, but also the application of all such funds; and such is the legal effect of articles 2242 and 7357, supra, when properly construed and applied.

"True, the Constitution does not say, in so many words, that money raised by a county, city, or town, by taxation for one such purpose shall never be expended for any other purpose--not even for another of the five general classes of purposes defined and approved in said section 9--but that, we think, is its plain and certain meaning and legal effect. The very definitions of those several classes of purposes, and the declaration of authority to tax the people therefor, respectively, coupled as they are, in each instance, with a limitation of the tax rate for that class, must have been predicated upon the expectation and intent that, as a matter of common honesty and fair dealing, tax money taken from the people ostensibly

for one such specified purpose shall be expended, as needed, for that purpose alone, as well as that the tax rate for that particular class, in any one year, shall not exceed the prescribed maximum.

"Conversely, and upon a like course of reasoning, it must have been intended that expenditures for any such designated purpose shall never include tax money in excess of the proceeds of the maximum tax rate prescribed by the Constitution for that purpose.

"Unless our above-stated conclusions are sound, there was no good reason for making the constitutional limitations upon the said five separate designated tax rates specific; the limitation upon the taxing power might as well have been couched in general terms applicable to all the designated purposes collectively, although prescribing an aggregate maximum tax rate applicable to any and all such purposes in the discretion of the governing body. In other words, unless said constitutional provisions were designed to limit the application or expenditure of each such tax fund for the specific purpose or purposes for which, declaredly, it is raised, as well as to limit the tax rate therefor, the same result in the way of protecting the people against exorbitant taxes could have been attained more simply and more conveniently by making, in said section 9 of article 8, one general limitation upon the taxing power with reference to all five such classes of purposes, collectively, thereby leaving the governing body free to apply any and all such funds according to its own judgment, provided only that no portion thereof shall be applied to any extraneous purpose, not included by the terms of that section." (Emphasis added.)

The Court, in construing Section 9 of Article VIII of the Texas Constitution, emphasizes the specific taxing limi tion on the funds in question and construes such limitation as

having a double purpose. First the specific limitations limit the amount of tax to be raised for each fund, and secondly such limitations require that money raised for such a fund be applied for that use and no other.

The 1956 and the 1967 amendments to Section 9 remove the specific taxing limitations upon the various funds, but retain the overall taxing limitation (80¢ on $100 valuation) upon the four funds; that is, the general fund, permanent improvement fund, road and bridge fund, and jury fund. The Court discusses this possibility (see quoted language underlined above, page 4) by concluding that an overall taxing limitation or an aggregate maximum tax rate applicable to all the funds would permit the governing bodies (counties, etc.) to apply the funds according to its own judgment as long as it used such funds for the specified purposes.

Clearly, the 1956 amendment and the 1967 amendment to Section 9 have now placed one general limitation upon the taxing power with reference to the funds in question. The 1967 amendment to Section 9 bestowing power upon any county to put all its tax money into one fund does not require that this be done, but instead confers the power subject to the good judgment of the Commissioners Court, so long as it does not impair outstanding bonds or obligations. Limited exercise of conferred power, as under the facts here, is well recognized by our Courts. cf. State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737, 743 (1960).

The language authorizing any county to put all its tax money from the four funds above mentioned into one general fund is discretionary since the word "may" conditions the authority. "The word 'may' ordinarily connotes discretion or permission." Ross v. Tide Water Oil Co., 136 Tex. 66, 145 S.W.2d 1089 (1941); Mitchell v. Hancock, 196 S.W. 694 (Tex.Civ.App. 1917, no writ); City of River Oaks v. Lake Worth Village, 231 S.W.2d 768 (Tex.Civ.App. 1950, error ref. n.r.e.). Such language being discretionary, it seems clear that a county may use one general fund for its taxes, subject to its outstanding debts, or a county may use the four funds in question according to its own judgment, as discussed in Carroll v. Williams, supra. Therefore, it is our opinion that your County Commissioners may consolidate the general revenue fund, jury fund, and permanent improvement fund

into one general fund and keep the road and bridge fund separate therefrom, without violating the provisions of Section 9 of Article VIII of the Texas Constitution.

## S U M M A R Y

Section 9 of Article VIII of Vernon's Texas Constitution, as amended, will permit a county commissioners court, having levied taxes for each of the four funds in question at a separate rate, to consolidate its general fund, permanent improvement fund and jury fund into one general fund, while maintaining separate and apart its road and bridge fund.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James Clayton McCoy
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
W. V. Geppert
W. O. Shultz
Bill Allen
Harold Kennedy

A. J. CARUBBI, JR.
Executive Assistant