WAIER *v.* STATE BOARD OF REGISTRATION FOR ARCHI-
TECTS, PROFESSIONAL ENGINEERS, & LAND
SURVEYORS.

1. LICENSES—ARCHITECTS—DISCRETION OF BOARD OF REGISTRATION
   —ACTIVE PRACTICE.
   Under statutory provision requiring board of registration to ac-
   cept an applicant as qualified for registration as an architect
   without examination upon his showing a specific record of at
   least 12 years of active practice as an architect previous to
   effective date of act, the board would have no discretion but
   to accept applicant where such showing was made (Act No.
   240, § 12, Pub. Acts 1937).

2. SAME — ARCHITECTS — REGISTRATION WITHOUT EXAMINATION —
   STATUTES.
   Action of board of registration in denying plaintiff's applica-
   tion for registration as an architect without examination was
   arbitrary and unreasonable where his undisputed testimony
   showed he had been engaged in active practice as an archi-
   tect for 12-year period which, by the statute, entitled him to
   registration without examination (Act No. 240, § 12, Pub.
   Acts 1937).

3. MANDAMUS—ESTOPPEL—CLEAN HANDS—RECORD.
   Plaintiff who complied with statutory provisions entitling him
   to registration as an architect without examination *held*, not
   estopped, under record presented, from securing mandatory
   relief sought because defendant board of registration claimed
   he did not come into court with clean hands (Act No. 240,
   Pub. Acts 1937).

4. COSTS—CONSTRUCTION OF STATUTES.
   No costs are allowed in proceeding in which construction of
   statute regulating registration of architects is involved (Act
   No. 240, Pub. Acts 1937).

Appeal from State Board of Registration for Architects, Professional Engineers, and Land Surveyors. Submitted October 20, 1942. (Docket No. 26, Calendar No. 41,978.) Decided November 24, 1942.

Vincent J. Waier made application to the State Board of Registration for Architects, Professional Engineers, and Land Surveyors for registration as an architect. Application denied. Appeal in the nature of mandamus to compel defendant to register plaintiff as an architect. Reversed.

*Albert McClatchey,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the defendant.

CHANDLER, C. J. Appellant made application to the State board of registration for architects, professional engineers and land surveyors for registration as an architect under the provisions of Act No. 240, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8689–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 18.84 [1] *et seq.*), claiming that he was entitled to such registration in accordance with the following provision contained in section 12 of said act:

"At any time within five years after this act becomes effective the board shall accept as conclusive evidence that an applicant is qualified for registration without examination, as an architect or as a professional engineer, a specific record of at least twelve years of active practice as an architect, or as

a professional engineer, previous to the effective date of this act.''

After a hearing, the board reached the following decision, denying the application:

'' 'January 15, 1942. The secretary's report of the hearing in this case was approved, and after consideration of all evidence, at hand, it was concluded that:

'' '(1) Applicant being unable to show ability to do architectural design,

'' '(2) Applicant's practice being nearly all in the field of engineering,

'' '(3) Business of V. J. Waier & Company, established in 1927, being ''* * * to do engineering design,''

'' '(4) Applicant's witnesses being unqualified to show his ability as an architect,

'' '(5) Applicant's assumed partner, Walter Garstecki, registered architect, having stated at the hearing that the applicant was not qualified to practice as an architect,

'' '(6) Applicant's present dual capacity in building his own architectural designs being in violation of the law.

'' '(7) And for other good and sufficient reasons, registration of V. J. Waier as an architect by exemption be denied.' ''

Appellant takes this appeal in the nature of mandamus, claiming that the record establishes that he has actively practiced as an architect for a period of at least 12 years previous to January 1, 1938, the effective date of the above-mentioned statute.

Appellant testified that he commenced to practice as an architect about the year 1909, maintaining an office at the corner of Ferry and Chene streets in the city of Detroit, subsequently moving his office to various other locations in said city. He advertised his services with a sign reading ''Architect and Engineer.'' From 1924 to 1928, he was associ-

ated with a Mr. Garstecki under the name of "V. J. Waier & Company, Architects and Engineers." In 1928, his association with Mr. Garstecki terminated and thereafter he claims to have pursued the profession alone.

Accompanying the application, appellant submitted a list of buildings constructed during and subsequent to the year 1909, and he testified:

"I would say 90 per cent. of them was done entirely under my supervision. I directed the preparing of the plans, and I had entire charge of the supervision."

Among the more important buildings in connection with which he claimed to have acted as architect are the Eastown Theatre Building in 1924 and 1925; Corpus Christi School erected in 1925 at a cost of $80,000; a garage, built in 1926 at a cost of $25,000; Waggoner Apartments, constructed in 1927 at a cost of $400,000; St. Hedwig School in 1928, costing $150,000; Federal Chain Stores in 1929, representing an investment of $100,000; and during the period from 1931 to 1936, he designed several buildings, including a proposed club building which would have cost $2,000,000.

In 1923 or 1924, he was registered as an engineer and it appears that during the earlier years of his practice he was employed as an engineer by the Truscon Steel Company, and his application for registration as an engineer listed several employments in such a capacity. In this connection, he testified that he nevertheless practiced as an architect during this period; that during the early days of his practice, it was necessary to supplement his income as an architect by accepting employment as an engineer.

He further testified that in 1924 he was commissioned to draw the plans for St. Martin's School,

and that at that time he entered into partnership with Mr. Garstecki, a registered architect, due to some criticisms that were made because of the fact that he was not registered as an architect. However, he stated that he prepared the preliminary plans for the school building, secured the contract and supervised the construction; that the detailed working drawings were prepared by hired draftsmen from the design conceived by him; and that Mr. Garstecki acted as bookkeeper.

The application was accompanied by recommendations of appellant as to architectural ability, some made in response to inquiries made by the board as to his qualifications as an architect. Most of these were favorable to appellant; two were unfavorable.

Two witnesses were sworn by appellant who testified as to services he had performed for them as an architect. The board called Walter F. Garstecki as a witness who testified that during the period he was associated with appellant, the latter was not qualified as an architect; that he was an engineer. ·

The record indicates that appellant has had little, if any, formal educational training as an architect.

The case is controlled by an application of the provisions of Act No. 240, Pub. Acts 1937, as that act stood prior to amendment by Act No. 294, Pub. Acts 1941. Section 2 * of the act defines an "architect" as,

"a person who, by reason of his knowledge of mathematics, the physical sciences, and the principles of architectural design, acquired by professional education and practical experience is qualified to engage in architectural practice as hereinafter defined."

The same section defines the "practice of architecture" as including,

---

* See Comp. Laws Supp. 1940, § 8689–2, Stat. Ann. 1940 Cum. Supp. § 18.84(2).—REPORTER.

"any professional service such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction, alteration, repair, or operation in connection with any public or private structures, buildings, equipment, works or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of architecture or architectural design, and where the consultant charges for knowledge and skill and has no prejudicial interest in the project, either as owner or contractor or producer or seller of material, except as hereinafter defined."

Section 12 sets forth the prerequisites that must be possessed by an applicant to entitle him to take an examination for registration, and also includes the provision, hereinbefore quoted, that,

"At any time within five years after this act becomes effective the board shall accept as conclusive evidence that an applicant is qualified for registration without examination, as an architect or as a professional engineer, a specific record of at least twelve years of active practice as an architect, or as a professional engineer, previous to the effective date of this act."

We have in mind the well-established rules pertaining to statutory construction as set forth in various decisions, including *City of Grand Rapids* v. *Crocker,* 219 Mich. 178; *Garwols* v. *Bankers Trust Co.,* 251 Mich. 420; *In re Chamberlain's Estate,* 298 Mich. 278, cited by appellee.

In applying the rules promulgated by these cases, we find no difficulty in giving full and complete effect to the provision under which appellant seeks registration. The board, in our opinion, in denying registration to appellant, nullified the effect of the provision by substituting its judgment for that of the

legislature as to the requirements that an applicant for registration must possess. The legislature has prescribed that certain applicants must be examined for registration and establish their qualifications for registration and the practice of the chosen profession by such examination. Such individuals must also establish that they have had either practical experience or formal educational training, or both, as prescribed by section 12 of the act, before they can apply for examination. However, the legislative body was of the opinion that one having at least 12 years of active practice as an architect was conclusively presumed to be qualified to engage in the profession without regard to educational training, ability to pass an examination propounded by the board, or the opinion of the board as to whether he was a "good" or a "bad" architect.

If appellant submitted a specific record of 12 years' active practice as an architect prior to January 1, 1938, the effective date of the act, the board was bound to grant the application regardless of their personal opinions. And it is of no consequence that, prior to the commencement of said 12-year period, appellant may have been employed for considerable periods of time as an engineer.

Appellant testified that for more than 12 years he continuously practiced as an architect and cited as examples of his work various buildings described in his application and to which we have referred. The record contains no evidence to dispute the testimony of appellant on the material question before the board, unless it is to be inferred that he was not practicing as an architect during his association with Mr. Garstecki from 1924 to 1928. Because of the importance of this period, we quote from appellant's testimony:

"*The Witness:* All right.   In 1924 I was commissioned to draw the plans for St. Martin's School,—

"*Chairman Kingscott:* Pardon me, let me interrupt.   'I was commissioned.'

"*The Witness:* That is what I said.

"*Chairman Kingscott:* And who was the company?

"*The Witness:* I.

"*Chairman Kingscott:* And what type of company was it?   Was it a partnership, a corporation?

"*The Witness:* No, not yet.   I am leading up to it.   I prepared the preliminary plans.   I submitted the estimates.   I secured the contract in competition with four leading architectural firms in Detroit. After I was awarded the contract my competitors began to raise Cain, that I was not registered as an architect.   Therefore my client advised me to secure a partner, so he would not have any disturbance in the diocese.   That is how it came about that I went into partnership; but these plans that I have here were entirely, the preliminary drawings and entirely prepared by myself, all the estimates were made by myself, and I went to work and supervised the building from beginning to end.   All the layouts of class rooms, boiler rooms, toilet rooms, recreation facilities, clinic—everything was laid out by me from beginning to end.

"When the contract was entirely secured and I had the contract, at that time I went into partnership.   These plans here were—these are the detailing of the result of my preliminary drawings.

"*Secretary Shelly:* In other words, after you went in there in this partnership arrangement, though, isn't it pretty clear then that when you found that you could not act as the architect, you acted as the engineering part of the firm of Garstecki & Waier?

"*The Witness:* No, we all did our share of the work.

"*Mr. Morison:* But you have stated by inference that your reason for taking an architect into your partnership was in order to satisfy your client and the then existing law.

"*The Witness:* That is right; but I still did the architectural work on that.

"*Secretary Shelly:* But you were not the principal architect, then, in any of these instances?

"*A.* Yes.

"*Mr. Morison:* You could not possibly be.

"*A.* How do you mean, I could not possibly be. I did the work, see.

"*Secretary Shelly:* In other words, you did the work at that time for Waier, if he was the man that the client wanted to represent as architect; then you did the drawing, drafting and all your work, but it had to go in as Waier's?

"*A.* Yes, it did.

"*Chairman Kingscott:* I notice here for the record that these plans are labeled 'V. J. Waier & Company, Architects and Engineers. W. F. Garstecki, Architect.'

"*Secretary Shelly:* That is what I wanted to bring out.

"*Chairman Kingscott:* I would like to know who 'K. W.' is?

"*A.* Kay was our partner.

"*Chairman Kingscott:* Who was the other partner, K. W.?

"*A.* Walter—wait a minute, what was his—I forget his first name?

"*Mr. Morison:* Walters, was it?

"*A.* No, not Walters. Walters worked for me after Garstecki left.

"*Chairman Kingscott:* 'Checked by Garstecki.' There is no evidence on here that Mr. Waier did any particularly heavy work on the plans.

"*By Mr. McClatchey* (resumed):

"*Q.* Who did the work on these plans?

"*A.* Our draftsmen.

"*Q.* Well, who gave the draftsmen instructions what to draw?

"*A.* Well, mostly in the drafting room, Mr. Kay.

"*Q.* Who designed the building?

"*A.* I did.

"*Q.* Who laid out the plans?

"*A.* I laid out the plans.

"*Q.* And what part did Mr. Garstecki have in it?

"*A.* He was more or less of the bookkeeper in the office.

"*Q.* Bookkeeper?

"*A.* Yes, collected money and so forth.

"*Q.* And who superintended the building?

"*A.* This building I superintended.

"*Q.* And what was the cost of it?

"*A.* The first addition was $287,000."

Mr. Garstecki, the only witness called by the board, did not deny the foregoing testimony of plaintiff in its material respects. The most that can be attributed to his testimony is that it was his opinion that appellant was not qualified as an architect during the period they were associated together.

It thus appears that the testimony of appellant which established that he had actively engaged in the practice of architecture for the designated 12-year period stands uncontroverted. An examination of the record leaves the impression that the board denied the application because of their personal opinion that appellant was not qualified. In so doing, they substituted their judgment for that of the legislature, which they had no right to do. Their action was arbitrary and unreasonable.

Appellee contends the relief sought should not be granted, arguing that appellant fails to come into court with clean hands because he associated himself with Mr. Garstecki, who was a registered architect, in order to nullify the criticism directed at him

on the St. Martin's School job; that during this period he did not openly and candidly hold himself out as actively engaged in the practice of the profession. The undisputed testimony of appellant is to the effect that he was so engaged and that the partnership with Garstecki was formed because of the disturbance raised by his competitors after he had secured the contract for the school. We find nothing in the record that would estop appellant from securing the relief he seeks.

A writ may issue as prayed. No costs will be allowed.

Boyles, North, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.