**Wallace BLOOM, Petitioner,**

v.

**The TEXAS STATE BOARD OF EXAMINERS OF PSYCHOLOGISTS et al., Respondents.**

**No. B–3243.**

Supreme Court of Texas.

March 21, 1973.

Mitchell, Yeakel, Orr & Trickey, Earl L. Yeakel, III, Austin, for petitioner.

John L. Hill, Atty. Gen., Harry C. Green, Asst. Atty. Gen., Austin, for respondents.

## ON MOTION FOR REHEARING

POPE, Justice.

The motion for rehearing is granted, the original and dissenting opinions are withdrawn and this opinion is substituted as the majority opinion of the court.

Dr. Wallace Bloom instituted suit in the 167th District Court of Travis County to obtain a writ of mandamus requiring the Texas State Board of Examiners of Psychologists to certify him as a psychologist under the grandfather clause of the Psychologists' Certification and Licensing Act, Acts 1969, 61st Leg., p. 2059, ch. 713, Art. 4512c. Vernon's Ann.Tex.Civ.Stats. The trial court, sitting without a jury, denied the writ, and the court of civil appeals with a divided court, affirmed. 475 S.W. 2d 374. We reverse the judgments below and grant petitioner's prayer for a mandamus.

The legal question presented for our decision is whether Dr. Bloom complied with the grandfather provisions of the Act, as stated in Section 15(b)(2) of Article 4512c:

Sec. 15(b) Until December 31, 1970 a person who is at least twenty-one years of age, a resident of this state, of good moral character, and is a citizen of the United States or has legally declared his intention of becoming a citizen may, upon application and payment of the certification fee, be certified without examination by the Board as a psychologist if [he]

(1) * * *

(2) has a master's degree from an accredited institution based upon a program which is primarily psychological

and, in addition, has had eight years of professional psychological experience.

■ Dr. Bloom was practicing his profession at the time the Act became effective and he qualified under the grandfather clause of the Act, which entitles him to a certificate. The purpose of grandfather provisions in licensing acts is to exempt from statutory regulations those members who have acceptably followed their profession or trade for a required period of years. Such exemptions are granted upon the presumption that those already practicing their profession were lawfully and satisfactorily performing their services on the date the regulatory act became effective. Watson v. Maryland, 218 U.S. 173, 30 S. Ct. 644, 54 L.Ed. 987 (1910); Krausmann v. Streeter, 226 Minn. 458, 33 N.W.2d 56 (1948); Annot., 4 A.L.R.2d 667; Hart v. Folsom, 70 N.H. 213, 47 A. 603 (1900); Annot., 136 A.L.R. 219.

The trial court made findings that Dr. Bloom met all of the statutory requirements for a license embodied in the provisions of the Act quoted above. The court of civil appeals agreed with those findings, saying: "The parties to this lawsuit are agreed that Applicant has fulfilled all of the requirements for licensing without an examination including the educational requirements." The court of civil appeals summarized Dr. Bloom's educational qualifications in this manner:

In this latter respect, while Appellant's Ph.D. degree is in education as opposed to psychology, his record reflects no fewer than 127 hours of graduate level courses in psychology and education psychology. In addition he has worked as Chief Psychologist at the Child Guidance Clinic, Lackland Air Force Base, San Antonio, Texas, as Staff Clinical Psychologist at the Porterville State Hospital in California, and as Industrial Psychologist with the United Technology Corporation. In addition to belonging to many associations connected with psychology, Appellant has taught courses in

the field of psychology at Our Lady of the Lake College in San Antonio, Texas and Fresno State College in Bakersfield, California.

The legal basis for the Board's refusal of Dr. Bloom's license and the refusal by the courts below to grant his prayer for mandamus is the Legislature's use of the word, "may," in section 15(b) quoted above. The argument is that the word, "may," used in section 15(b), does not mean "must," but is a word which vested broad discretion in the Board so long as it acted reasonably and not arbitrarily.

In our opinion, a larger problem than the meaning of "may" is presented by the Board's denial of the license. The real question is whether the Legislature could constitutionally empower an administrative agency to do whatever it "may" consider in the best interest of the public without regard to statutory standards or published agency rules. We have no problem in this case concerning any broadened powers arising under rules which the Board may have promulgated, and the Board does not urge that it acted by force of any power other than the words of the statute.

■ The correct meaning of the word, "may," is that the Board has discretion in its administration of the statute's stated standards, but the word does not empower the Board to make standards which are different from or inconsistent with the statute, even though they may be reasonable and may be administered reasonably. "May" does not empower the agency to require an examination in instances where the Legislature has excused an examination. Instead, the statute deems competent an applicant who proves that he has a master's degree in psychology and has practiced his profession for as long as eight years. If the Board may enact unstated, unpromulgated and additional requirements for an applicant under the grandfather clause, the Board may, upon the same reasoning, require such applicants to take a designated refresher course of study or

publish a minimum number of research papers. Under such a rule, the Board could decide to give an applicant credit for the time served in the armed forces to apply against the eight years of required practice or require any number of other compliances which are not required by the statute.

Our former decision in Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, 1025–1027 (1942), explains the limits of powers delegated to an administrative agency. Pursuant to a proper delegation of powers, the Railroad Commission adopted Rule 37, the well-spacing rule. The rule contained a provision under which the Commission could grant exceptions to the rule and permit the drilling in smaller areas when the Commission determined that such exceptions were necessary to prevent waste. The Commission in that case possessed rule-making powers, but its rules did not set forth any standards by which such exceptions would be recognized. This court wrote, "The Commission has never fixed any standard or rule by which it would be guided in determining under what circumstances an applicant would be entitled to such a permit, except that it will grant the permit 'whenever the Commission shall determine that such exceptions are necessary to prevent waste.' " Seeking to uphold the grant of a permit under that broad rule, the Commission urged that it had discretion to determine the density of wells and matters of waste, and so long as there was substantial evidence in support of its decision, its acts were valid. This court ruled that the Commission exceeded its authority and that its construction of the rule would amount to the grant of arbitrary powers. The court said:

It is a well-established principle of constitutional law that any statute or ordinance regulating the conduct of a lawful business or industry and authorizing the granting or withholding of licenses or permits as the designated officials arbitrarily choose, without setting forth any

guide or standard to govern such officials in distinguishing between individuals entitled to such permits or licenses and those not so entitled, is unconstitutional and void.

In Texas State Board of Examiners in Optometry v. Carp, 412 S.W.2d 307 (Tex. 1967), we examined the powers of the Board of Optometry under a statute which was in terms of "may refuse to issue a license" and "may cancel, revoke or suspend any license . . .." Art. 4563. The problem in that case was to decide whether the Board, in the exercise of its delegated rule-making powers, had kept within the framework of the statutory grounds for licensing and revoking or canceling a license. Our decision was that the rules which the Optometry Board had promulgated and which were in question were covered by one or more of the statutory delegations of power. See also Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957).

■ We conclude that Dr. Bloom has met every statutory requirement for a certification under the grandfather clause of the Act. The judgments of the courts below are reversed and judgment is here rendered that the Texas State Board of Examiners of Psychologists issue the certificate to Dr. Bloom as required by law. Writ of mandamus will issue only if the Board refuses to do so.

Dissenting Opinion by WALKER, J., in which GREENHILL, C. J., and REAVLEY, J., join.

SAM D. JOHNSON, J., not sitting.

WALKER, Justice (dissenting).

I respectfully dissent. In my opinion the case as stated by the Court is not the one decided by the courts below. The legal question presented for decision is not whether Dr. Bloom complied with the grandfather clause of the Act. Art. 4512c, § 15, V.A.T.S. He did. Our question is not whether the word "may" vested broad discretion in the Board, so long as it acted reasonably and not arbitrarily, to license or not license as it might consider to be in the best interest of the public without regard to statutory standards or published agency rules. There is no contention that it did. The question to be decided is quite narrow and somewhat more difficult than those posed by the majority opinion.

It is necessary to notice certain facts not mentioned by the Court. Petitioner first set out to obtain a Ph.D. degree in educational psychology. He successfully passed the qualifying written examination but failed the oral examination and was advised that he would not be admitted to final candidacy. His course of study was accordingly changed, and he eventually received a doctoral degree in the philosophy and history of education.

When petitioner applied in 1970 for certification as a psychologist under the Act, the Board conducted a routine investigation. On the basis of the information obtained in the course of that investigation, it concluded that there is a serious question as to petitioner's competence to practice. There is substantial evidence in the record reasonably supporting that conclusion. The Board then requested petitioner to take the usual written and oral examinations that are prepared and graded by an independent professional testing organization.[1] The present suit was filed about 18 months later.

The Court holds that since petitioner has a master's degree in psychology and had practiced his profession for at least eight years while employed by various governmental agencies [2] and by a private corpora-

---

1. The trial court excluded evidence showing that on June 27, 1970, petitioner took but failed the examination. He then applied for and was granted certification as a psychological associate. See Art. 4512c, § 19.

2. The Act does not apply to a person employed as a psychologist by any federal,

tion in another state, the Board was under the mandatory duty to certify him even though, as indicated by the testimony of one expert witness, "he could not deal effectively with the public and give them good responsible professional service if something upset him." Apparently this holding is based primarily on the proposition that a statute or ordinance regulating the conduct of a lawful business or industry and authorizing the granting or withholding of licenses or permits as the designated officials arbitrarily choose, without setting forth any guide or standard to govern such officials in distinguishing between individuals entitled to such permits or licenses and those not so entitled, is unconstitutional and void. This proposition is entirely sound, but it does not mean that an agency charged with responsibility for granting or withholding licenses or permits may never be given any discretion whatsoever.

"It is well settled that it is not always necessary that ordinances pertaining to the granting and withholding of licenses must prescribe a specific rule of action. This is particularly true where the discretion relates to matters within police regulation and is necessary to protect the public health, safety, morals and general welfare." Whittle v. Nesmith, 255 Ala. 193, 51 So. 2d 6. See also State v. De Verges, 153 La. 349, 95 So. 805, 27 A.L.R. 1526; State v. Yopp, 97 N.C. 477, 2 S.E. 458; 51 Am. Jur.2d, Licenses and Permits, § 53; Annotations, 12 A.L.R. 1435, 54 A.L.R. 1104, 92 A.L.R. 400. In State v. City of Billings, 79 Mont. 25, 255 P. 11, 54 A.L.R. 1091, the court pointed out that:

The generally accepted rule that an ordinance which vests in public officials a discretion to grant or refuse to grant a license to carry on an ordinarily lawful business, without reference to all of the classes to which the ordinance is intended to apply, without being guided by specifically enumerated conditions to which all persons similarly situated may know-

ingly conform, is invalid, is subject to the qualification that, where it is impracticable to lay down a definite or all-comprehensive rule, *or when the ordinance relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential to the validity of the ordinance that it prescribe all the conditions upon which such license shall be granted or refused.* (Emphasis supplied)

In my opinion this case should not be decided on the basis of sweeping generalizations without making any effort to determine and give effect to the legislative purpose and intent. According to the majority opinion, the purpose of grandfather provisions in licensing acts is to exempt from statutory regulations those members who have acceptably followed their profession or trade for a required period of years. If that proposition is sound, it disposes of the present case. It is a correct statement with respect to the grandfather clauses in some licensing acts. For example, the statute in Waier v. State Board of Reg. for Architects, 303 Mich. 360, 6 N.W.2d 545, provided that "the board shall accept as conclusive evidence that an applicant is qualified for registration without examination" a specific record of at least twelve years of active practice. The statute in Hart v. Folsom, 70 N.H. 213, 47 A. 603, provided that every practitioner of medicine and surgery prior to the passage of the act "shall be . . . entitled to registration." Some of our Texas statutes are couched in language that makes clear the legislative intent to exempt the individuals described from all or part of the examination required of others. See Arts. 307A; 307A-1; 307A-2; 307B; 4512b, § 10; 4520; 4582b, § 4; 4590c, § 8; and 4590d, § 12, V.A.T.S. In other cases the Legislature has made it equally clear that the responsible agency is to exercise its discretion in licensing persons who satisfy the requirements specified. See Arts. 4500;

---

state, county or municipal agency provided psychological services are not of-

fered to the public for compensation. See Art. 4512c, § 22.

4542a, §§ 8–9; 4545a; arid 4590d, § 3, V. A.T.S.

Here the Legislature has simply provided that one with petitioner's training and experience "may . . . be certified without examination." Although the word "may" is often used to mean "must," it ordinarily suggests permission or enablement and is not construed as mandatory unless there is something in the subject matter or context indicating that it was employed in that sense. Ross v. Tide Water Oil Co., 136 Tex. 66, 145 S.W.2d 1089; National Surety Corp. v. Ladd, 131 Tex. 295, 115 S.W.2d 600; American Mortgage Corp. v. Samuell, 130 Tex. 107, 108 S.W.2d 193; San Angelo Nat. Bank v. Fitzpatrick, 88 Tex. 213, 30 S.W. 1053; Kleck v. Zoning Board of Adjustment, Tex.Civ.App., 319 S.W.2d 406 (w.r. ref.). Petitioner recognizes these basic principles, but he relies on the rule that the word "may" means "must" whenever third persons or the public have an interest in having the act done or a claim de jure that the power shall be exercised. See Smalley v. Paine, 102 Tex. 304, 116 S.W. 38; Smissen v. State, 71 Tex. 222, 9 S.W. 112; Rains v. Herring, 68 Tex. 468, 5 S.W. 369. This rule is of no assistance in the present case where petitioner's personal interest conflicts with that of the public.

When the entire act is considered, it seems clear to me that the Legislature intended for the words "may" and "must" in Sec. 15 to be given their ordinary meanings. The first sentence of the section provides in unmistakable terms that a qualified applicant who has successfully passed the examination and paid the required fee "shall be certified by the Board as a psychologist." In this context it is difficult to believe that the word "may" was used in the next sentence to indicate compulsion. The provisions of Sec. 14 show, moreover, that the Legislature contemplated the Board's exercise of discretion in requiring or waiving the examination in certain instances. It will also be noted that the grandfather clause does not require that the applicant be engaged in the practice of psychology on or within any specified time prior to the date of his application. Under petitioner's construction of the statute, which the Court now adopts, the Board was under the absolute duty to certify, without question or investigation, persons who had not practiced for many years or who were known to be incompetent. It seems to me that this intention should not be attributed to the Legislature unless plainly required by the language of the statute. In this instance it tends to defeat one of the declared purposes of the statute, which was to protect the public against unqualified practitioners. See Acts 1969, 61st Leg., p. 2059, ch. 713, § 28.

The majority apparently assume that we must choose one of only two alternatives: either unlimited discretion or no discretion whatsoever on the part of the Board. In my opinion this is not a sound approach. We should, if possible, give the statute a construction that is constitutional and that will also carry out the legislative purpose. The Legislature did not provide that anyone meeting the specified requirements shall be certified, but it did provide that such a person may be certified without examination. The obvious intention was to grant some discretion to the Board, but the statute itself specifies the requirements that must be met with respect to age, residence, citizenship, education, and professional experience. In my opinion the clear and necessary implication is that the Board would have discretion to require an examination if there was a reasonable doubt as to the applicant's professional competence. This construction of the statute, which I would adopt, gives effect to all of its provisions, vests the Board with only a limited and constitutional discretion, and carries out the basic legislative purpose of protecting the public from "exploitation and injury at the hands of the unqualified and unscrupulous."

While recognizing the general rule relied upon by the majority here, the Supreme Court of California has held that standards

**466**

for administrative action can sometimes be found by implication. In re Petersen, 51 Cal.2d 177, 331 P.2d 24, 77 A.L.R.2d 1291. In Barton Trucking Corp. v. O'Connell, 7 N.Y.2d 299, 197 N.Y.S.2d 138, 165 N.E.2d 163, the New York Court of Appeals observed that:

> There can be no disputing the general rule that any discretionary powers exercised by an administrative officer must be delegated to him by statute, and that such delegation must be accompanied by standards to guide the exercise of administrative discretion. With respect to licensing officials, however, it is equally well settled that the power to withhold a license for good cause, as well as the standards defining good cause, need not be *expressly* delegated where, by fair implication, in light of the statutory purpose, such power has been *implicitly* delegated.

This exception to the general rule has particular application in the present case. I would affirm the judgment of the Court of Civil Appeals.

GREENHILL, C. J., and REAVLEY, J., join in this dissent.

