

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

March 13, 2006

The Honorable Dianne White Delisi
Chair, Committee on Public Health
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0409

Re: Authority of the Private Security Board to adopt certain rules regulating newly registered alarm installers (RQ-0391-GA)

Dear Representative Delisi:

You write to inquire about the authority of the Private Security Board to adopt certain rules regulating newly registered alarm installers.[1] Specifically, you seek our opinion as to whether the Private Security Board has the authority to adopt the following two requirements:

1. A requirement that newly registered alarm installers work under the direct supervision of an alarm installer who has passed, as a minimum, the Alarm Level 1 test; and

2. A requirement that an alarm installer's activities must be performed to a certain minimum electronics standard, such as the National Electrical Code.

*See* Request Letter, *supra* note 1, at 1–2.

## I.    <u>Legal Background</u>

The Private Security Board (the "Board") is an administrative agency originally created in 1969 as the Texas Board of Private Investigators and Private Security Agencies. *See* Act of May 27, 1969, 61st Leg., R.S., ch. 610, 1969 Tex. Gen. Laws 1807. It was created "to consolidate, standardize, and strengthen the State's oversight of the private investigations and private security industry." SUNSET ADVISORY COMMISSION, TEXAS BOARD OF PRIVATE INVESTIGATORS AND PRIVATE SECURITY AGENCIES, STAFF REPORT, at 5 (Sept. 1998) [hereinafter Sunset Report]. Evolving over time to adapt to changes in the security industry, in 1999, it was renamed the Texas

---

[1]Letter from Honorable Dianne White Delisi, Chair, Committee on Public Health, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas (Aug. 31, 2005) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

Commission on Private Security.[2] *See* Act of May 24, 1999, 76th Leg., R.S., ch. 974, § 1–2, 1999 Tex. Gen. Laws 3725. It became part of the Texas Department of Public Safety ("DPS") in 2003 as the Private Security Board.[3] *See* Act of Oct. 12, 2003, 78th Leg., 3d C.S., ch. 10, § 2.02, 2003 Tex. Gen. Laws 130, 132 (codified at TEX. OCC. CODE ANN. § 1702.005(b)).

The Board is governed by the Private Security Act found in chapter 1702, Texas Occupations Code. *See* TEX. OCC. CODE ANN. § 1702.001 (Vernon 2004). Chapter 1702 establishes a statutory licensing and regulatory scheme for private investigators and private security companies that is designed to "assure citizens and consumers that regulated companies and individuals are qualified, ethical, responsible and professional." Sunset Report, *supra* at 57. The Board also "serves as a source of standards of conduct and quality to the industry as a whole." *Id.* Pursuant to this scheme, the Board licenses security services contractors, *see* TEX. OCC. CODE ANN. § 1702.004(1) (Vernon 2004), which include alarm systems companies.[4] *See id.* § 1702.102(a)(1). The Board also registers individuals who are connected with license holders, *see id.* § 1702.004(4)(A), such as alarm installers.[5] *See id.* § 1702.221. In addition to licensing, the Board regulates those holding licenses or registrations under chapter 1702. *See id.* § 1702.004(5). With its enforcement power, *see id.* § 1702.061(d)(4) ("establish and enforce standards"), the Board works to assure the public that "individuals practicing in the regulated area maintain the qualifications and the standards of conduct to safely and effectively perform their responsibilities." Sunset Report, *supra* at 37.

To carry out its purpose, the Board is expressly authorized to "adopt rules and general policies to guide the agency in the administration of [chapter 1702]," TEX. OCC. CODE ANN. § 1702.061(b) (Vernon 2004), and has power to "adopt rules necessary to implement [chapter 1702]." *Id.* § 1702.061(d)(3). By statute, the Board has the power and "duty to determine the qualifications of license holders, registrants, and commissioned security officers," *id.* § 1702.061(d)(1), and to "investigate alleged violations of [chapter 1702] and of commission rules." *Id.* § 1702.061(d)(2). The Board is directed to "establish and enforce standards governing the safety and conduct of each person licensed, registered, or commissioned under [chapter 1702]." *Id.* § 1702.061(d)(4). In addition, the Board is authorized to adopt by rule "additional qualifications for

---

[2]Since 2003, references in chapter 1702 or other Texas statutes to the Texas Commission on Private Security mean the Private Security Board. *See* TEX. OCC. CODE ANN. § 1702.005(b) (Vernon 2004).

[3]We consider the Board's authority to adopt the proposed rules pursuant to its enabling legislation, the Private Security Act. We do not here consider any authority the Texas Department of Public Safety might have to adopt the proposed rules.

[4]"A person acts as an alarm systems company for the purpose of [chapter 1702] if the person sells, installs, services, monitors, or responds to an alarm system or detection device." *Id.* § 1702.105.

[5]"An individual acts as an alarm systems installer for purposes of [chapter 1702] if the individual installs, maintains, or repairs an alarm system or detection device." *Id.* § 1702.223. We assume that you ask about installation of burglar alarms as defined by Occupations Code section 1702.002(1)(A) and not about fire alarm installation regulated by the Department of Insurance. *See id.* § 1702.329; *see also* TEX. INS. CODE ANN. art. 5.43-2 (Vernon Supp. 2005).

an individual to be registered under [subchapter J, Chapter 1702]."[6] *Id.* § 1702.229(b). The Board's rulemaking power is expressly limited in that "[t]he rules and policies . . . must be consistent with [chapter 1702] and other . . . rules adopted under [chapter 1702] and with any other applicable law, state rule, or federal regulation." *Id.* § 1702.061(c). Moreover, the legislature further limited the Board's rulemaking authority by requiring that any proposed rules be approved in advance by the DPS. *See id.* § 1702.0611 (Vernon Supp. 2005).

An agency can adopt rules that are authorized by and consistent with its statutory authority. *See R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992). An agency's authority to promulgate rules and regulations "may be expressly conferred on it by statute or implied from other powers and duties given or imposed by statute." *Id.* "The rulemaking power . . . does not permit the enactment of regulations which are inconsistent with the expression of the lawmakers' intent in statutes other than those under which the regulations are issued." *State v. Jackson*, 376 S.W.2d 341, 344 (Tex. 1964). The determining factor in whether a particular agency has exceeded its rulemaking authority is whether the rules are "in harmony with the general objectives of the Act involved." *Lone Star Gas Co.*, 844 S.W.2d at 685. An agency rule that imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions is invalid. *See Hollywood Calling v. Pub. Util. Comm'n*, 805 S.W.2d 618, 620 (Tex. App.—Austin 1991, no writ). "Specifically, a licensing agency for a business or profession cannot enforce standards that are more burdensome than those of the controlling statute, even though they may be reasonable and may be administered reasonably." Tex. Att'y Gen. Op. No. JC-0049 (1999) at 3 (citing *Bloom v. Tex. State Bd. of Exam'rs of Psychologists*, 492 S.W.2d 460, 462 (Tex. 1973)).

## II.    Direct Supervision of Alarm Installer

With these rules in mind, we first consider the proposed requirement that a newly registered alarm installer work under the direct supervision of an alarm installer who has passed the Alarm Level 1 test. *See* Request Letter, *supra* note 1, at 1. We first examine the registration scheme for alarm installers established by the Board's enabling statute. Under chapter 1702, Occupations Code, an individual employed as an alarm installer is required to register with the Board. *See* TEX. OCC. CODE ANN. § 1702.221(1) (Vernon 2004). The statute requires that an individual be 18 years of age to register. *See id.* § 1702.229(a). An application for registration must be verified and include:

(1)  the applicant's full name, residence address, residence telephone number, date and place of birth, and social security number;

(2)  a statement [regarding names used by applicant];

(3)  the name and address of the applicant's employer and, if applicable, the applicant's consulting firm;

(4)  the date the employment commenced;

---

[6]Subchapter J, chapter 1702, is entitled "Registration Requirements; Registrant Duties" and includes the provision that requires registration of alarm installers. *See* TEX. OCC. CODE ANN. § 1702.221(1) (Vernon 2004).

(5) a letter from the license holder [for whom registrant works] requesting that the applicant be registered;

(6) the title of the position occupied by the applicant and a description of the applicant's duties; and

(7) any other information, evidence, statement, or document required by the commission.

*Id.* § 1702.230(a). In addition to the application, the statute requires a criminal history check on the registrant. *See id.* § 1702.282 (Vernon Supp. 2005). The Board is authorized to establish additional qualifications for an individual to be registered. *See id.* § 1702.229(b) (Vernon 2004). The Board is also authorized to require continuing education for a registrant, *see id.* § 1702.308, and to require an alarm installer to have met additional training requirements in order to renew an initial registration. *See id.* § 1702.239. A registration is valid for two years. *See id.* § 1702.233.

The proposed requirement about which you ask would apply to a "newly registered alarm installer." Request Letter, *supra* note 1, at 1, 4. While you do not define the term, we understand it to at least mean a person who is already registered. By its plain language, the provision granting authority to establish additional qualifications applies only to those individuals who have yet to be registered. *See* TEX. OCC. CODE ANN. § 1702.229(b) (Vernon 2004). With respect to alarm installers who have already registered, the Board has only the authority to require continuing education and to impose additional training requirements for registration renewal. *See id.* §§ 1702.308, .239. Thus, we must determine whether the authority given the Board for continuing education and training includes the authority to require an alarm installer to work under the direct supervision of one who has passed the Alarm Level 1 test.

Section 1702.239 authorizes the Board to "require that an individual employed as an alarm installer . . . hold a certification by a commission-approved training program to renew an initial registration." *Id.* § 1702.239(a). The Board's authority to approve training programs is limited to those programs that are nationally recognized and that consist of a minimum of 16 hours of classroom study. *See id.* Moreover, a training program suitable to be authorized as a requirement by the Board must "offer at least two [sufficient] certification programs each year . . . within 100 miles of each county in the state that has a population of more than 500,000." *See id.* § 1702.239(a). The Board also has authority to "recognize, prepare, or administer continuing education programs" and to require a registrant to participate in continuing education programs to maintain the individual's registration. *See id.* § 1702.308(b)–(c). In its exercise of this authority, the Board is required to "set the minimum number of hours that must be completed and the types of programs that may be offered." *See id.* § 1702.308(b). Both grants of authority contemplate a formal program or course of instruction with certain defined parameters. We do not believe a requirement that a newly registered alarm installer work under the direct supervision of one who has passed the Alarm Level 1 test falls within the parameters of a nationally recognized training program or of a continuing education program.

Moreover, the proposed requirement imposes on the alarm installer the burden of being accompanied by a supervisor for every installation activity. Such a requirement, is in essence, an apprenticeship requirement which we believe is an additional burden beyond the registration scheme set out by chapter 1702. *See supra* at 3; *see also State v. Pub. Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied) (administrative agency rules cannot impose additional burdens, conditions, or restrictions exceeding or inconsistent with statutory provisions). Texas statutes contain many examples of apprenticeship or internship requirements in connection with certain occupations. *See* TEX. OCC. CODE ANN. §§ 402.207 (authorizing apprenticeship permit to hearing instrument fitter and dispenser), 451.153 (Vernon 2004) (establishing apprenticeship requirements for athletic trainers), §§ 455.159 (authorizing student internship program for massage therapy students), 502.252 (Vernon Supp. 2005) (authorizing internship prior to issuance of marriage and family therapy license), §§ 1102.101 (requiring apprentice inspector license for real estate inspectors), 1301.354 (Vernon 2004) (requiring drain cleaner-restricted registrant to have worked as plumber's apprentice). Clearly, the legislature knows how to give a regulating or licensing agency the authority to adopt rules establishing or governing an apprenticeship requirement. *See* Tex. Att'y Gen. Op. Nos. GA-0271 (2004) at 2 (stating that when "it wishes to require immunizations for specific categories of persons, the legislature knows how to do so"), GA-0144 (2004) at 5 (stating that when "the legislature intends to confer on a licensing board [certain] authority . . . , it knows how to do so"). The fact that the legislature did not do so here leads us to conclude that a rule which essentially requires an alarm installer to serve as an apprentice is outside the scope of the Board's rulemaking authority. We, therefore, conclude the Board does not have the authority to adopt a requirement that a newly registered alarm installer work under the direct supervision of one who has passed the Alarm Level 1 test.

## III.    **Minimum Electronics Standards**

We next consider the proposed requirement regarding minimum electronics standards. We only address the narrow question of whether the Board is authorized to adopt a requirement that an "alarm installer's activities must be performed to a certain minimum electronics standard, such as the National Electrical Code." *See* Request Letter, *supra* note 1, at 2. In the absence of any particular minimum electronics standard being specifically identified, however, we can only advise you in general terms.

The Board has express authority to "establish and enforce standards governing the safety and conduct of each person . . . registered . . . under [chapter 1702]." TEX. OCC. CODE ANN. § 1702.061(d)(4) (Vernon 2004). In addition, the Board has express authority to establish qualifications for registrants. *See id.* §§ 1702.061(d)(1), .229(b). Chapter 1702 does not define the terms "safety," "conduct," or "qualifications," and we find no judicial or attorney general opinion that provides a suitable definition of these terms. In the absence of a legally defined meaning, a court will look to the plain meaning of a word as understood by the ordinary person. *See Bingham v. State*, 915 S.W.2d 9, 15 (Tex. Crim. App. 1994); *see also* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005) (words and phrases construed according to the rules of common usage). The Oxford English Dictionary defines "safety" as the "state of being safe; exemption from hurt or injury; freedom from danger." XIV THE OXFORD ENGLISH DICTIONARY 358 (2d ed. 1989). In the context of chapter

1702, we believe the term "safety" has a broad scope that includes both the person subject to chapter 1702, *see* TEX. OCC. CODE ANN. § 1702.061(d)(4) (Vernon 2004) ("safety . . . of *each person* . . . registered [under chapter 1702]," and the general public. *See* Sunset Report, *supra* at 37 (stating that improved enforcement of minimum standards and qualifications of those working in the industry will assure "that individuals practicing in the regulated area maintain the qualifications and the standards of conduct to safely and effectively perform their responsibilities"). The term "conduct" is defined as the "action or manner of conducting, directing, managing, or carrying on (any business, performance, process, course, etc.)." III THE OXFORD ENGLISH DICTIONARY 690 (2d ed. 1989). Finally, "qualification" is defined as "a quality, accomplishment, etc., which qualifies or fits a person for some office or function." *Id.* at 971.

Pursuant to the ordinary meaning of these terms, we believe the Board has authority to establish and enforce standards designed to protect a person subject to chapter 1702 and members of the general public from injury or danger. We believe that the Board also has the authority to establish and enforce standards that direct the action or manner in which a person subject to chapter 1702 performs the activities regulated by chapter 1702. Finally, we believe the Board has authority to define the qualities or accomplishments that are required of a person subject to chapter 1702 in order for that person to perform the activities regulated by chapter 1702. The Board has authority to establish and enforce standards designed to protect alarm installers and the general public from injury or danger as well as the authority to define the qualities or accomplishments that are required of an alarm installer in order for the alarm installer to be qualified to perform alarm installations. *See supra* at p. 5. Therefore, we conclude that to the extent any particular minimum electronics standard is directly designed to protect the alarm installer or the general public from injury or danger, the Board has authority to adopt the standard. In the same vein, to the extent a particular minimum electronics standard defines the qualities or accomplishments that are required of an alarm installer in order for the alarm installer to be qualified to perform alarm installations, the Board has authority to adopt the standard. Without a specific standard to consider, we leave it to the Board, subject to judicial review, *see Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 538 (Tex. App.—Austin 2002, pet. denied), to determine whether any proposed minimum electronics standard directly pertains to the safety, conduct, or qualifications of a person subject to chapter 1702, Occupations Code.

## S U M M A R Y

The Private Security Board does not have authority to adopt a proposed rule requiring that a newly registered alarm installer work under the direct supervision of an alarm installer who has passed the Alarm Level 1 test. To the extent that any particular minimum electronics standard directly pertains to the safety, conduct, or qualifications of a person subject to chapter 1702, Occupations Code, the Private Security Board is authorized to adopt the standard.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee